UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
LAURA HONSAKER, individually and as a natural parent and guardian of
A.V., an infant,

*Plaintiffs,*

-against-

THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON
(SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000),
POLICE OFFICERS "JOHN DOE #1-8" (the names "John Doe" and "Jane
Doe" being fictitious as the true names are presently unknown), individually and
in their official capacity as New York City Police Officers; CORRECTION
OFFICERS "JOHN DOE 1-4" (the names "John Doe" and "Jane Doe" being
fictitious as the true names are presently unknown), individually and in their
official capacity as New York City Correction Officers; CORIZON HEALTH
INC., DR. ANDREA BUSHELLE, MD and JOHN/JANE DOE #1-4(the
names "John Doe" and "Jane Doe" being fictitious as the true names are
presently unknown), individually and in their official capacity as New York City
Health and Hospitals Corporation employees, agents, representatives, or medical
personnel,

*Defendants.*
-------------------------------------------------------------------------------X

**COMPLAINT**

JURY TRIAL
DEMANDED

*Civil Action No.*_____

Plaintiffs **LAURA HONSAKER** and **A.V.,** by their attorneys **NOVO LAW FIRM, PC,**
complaining of Defendants **THE CITY OF NEW YORK, POLICE OFFICER CESAR
DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000), POLICE
OFFICERS "JOHN DOE #1-8", CORRECTION OFFICERS "JOHN DOE 1-4", CORIZON
HEALTH SERVICES INC., DR. ANDREA BUSHELLE, MD, and   NYCHHC'S
JOHN/JANE DOE #1-4,** respectfully alleges, upon information and belief:

**PRELIMINARY STATEMENT**

1.      This is a civil rights action in which Plaintiffs **LAURA HONSAKER** and **A.V.** seeks relief for

   Defendants' violation of her rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983

   and 42 U.S.C. § 1988, and of rights secured by the First, Fourth and Fourteenth Amendments to

   the United States Constitution, and of rights secured under the laws and Constitution of the

   State of New York.  Plaintiffs seek damages, compensatory and punitive, affirmative and

1

equitable relief, an award of costs, interest and attorney's fees, and such other and further relief as the Court deems equitable and just.

## JURISDICTION AND VENUE

2. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343 and § 1331, there being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3. Jurisdiction is also invoked herein pursuant to the First, Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

4. Plaintiff respectfully requests that the Court exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any state court causes of action that arise from a common nucleus of operative facts that give rise to the federally based causes of action pleaded herein, and as against all parties that are so related to claims in the action within the original jurisdiction of the court that are formed as part of the same case or controversy.

5. That the arrest and imprisonment took place in the State of New York.

6. Venue herein is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 (a), (b) and (c).

## JURY DEMAND

7. Plaintiff respectfully demands a trial by jury of all issues in the matter pursuant to Fed. R. Civ. P. 38(b).

8. Upon information and belief and within the time prescribed by law, a sworn Notice of Claim stating, among other things, the time when and the place where the injuries and damages were sustained, together with Plaintiff's demands for adjustment thereof was duly served on Plaintiff's behalf on the Comptroller of Defendant **THE CITY OF NEW YORK** and that, thereafter, said Comptroller for Defendant **THE CITY OF NEW YORK** refused or neglected for more than thirty (30) days, and up to the commencement of the action, to make any adjustment or payment thereof, and that, thereafter, and within the time provided by law, the action was commenced.

2

9.  Upon information and belief, pursuant to General Municipal Law §50(h), a hearing was held at the office of a designated agent.

## PARTIES

10. Plaintiff-Infant **A.V.** is a newborn and at all times hereinafter mentioned was, and still is, a citizen of the United States residing **LAURA HONSAKER**  with her mother and natural guardian at Town of Riverville, State of West Virginia.

11. Plaintiff **LAURA HONSAKER** is a 27 years old and at all times hereinafter mentioned was, and still is, a citizen of the United States residing in the Town of Riverville, State of West Virginia.

12. Defendant **THE CITY OF NEW YORK** was, and still is, at all times relevant herein, a municipal corporation duly incorporated and existing under and by virtue of the laws of the State of New York.

13. Defendant **THE CITY OF NEW YORK** was, and still is, at all times relevant herein, a municipal entity created and authorized under the laws of the State of New York. It is authorized to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant **THE CITY OF NEW YORK** assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by New York City Police Department.

14. Defendant **THE CITY OF NEW YORK** was, and still is, at all times relevant herein, a municipal entity created and authorized under the laws of the State of New York. It is authorized to maintain Department of Correction, which acts as its agent in the area of care, confinement and rehabilitation of inmates and for which it is ultimately responsible. Defendant **THE CITY OF NEW YORK** assumes the risks incidental to the maintenance of a correction facilities and the employment of correction officers as said risk attaches to the public consumers of the services provided by New York City Department of Correction.

15.    Defendants **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000) and POLICE OFFICERS JOHN DOE #1-8** were, and still are, at all times relevant herein, duly appointed and acting officers, agents, servants, and employees of New York City Police Department a municipal agency of Defendant **THE CITY OF NEW YORK**.

16.    Defendants **CORRECTION OFFICERS JOHN DOE #1-4** were, and still are, at all times relevant herein, duly appointed and acting officers, agents, servants, and employees of New York City Department of Correction a municipal agency of Defendant **THE CITY OF NEW YORK**.

17.    Defendant **DR. ANDREA BUSHELLE, MD and NEW YORK CITY HEALTH AND HOSPITALS CORPORATION'S JOHN/JANE DOE #1-4** were, and still are, at all times relevant herein, duly appointed and acting medical personnel, agents, servants, and employees of **DEFENDANT CORIZON HEALTH INC.** and/or New York City Health and Hospitals Corporation a municipal agency of Defendant **THE CITY OF NEW YORK**.

18.    Defendants **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000) and POLICE OFFICERS JOHN DOE #1-8** were, and still are, at all times relevant herein, acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of Defendant **THE CITY OF NEW YORK,** were acting for, and on behalf of, and with the power and authority vested in them by Defendants **THE CITY OF NEW YORK** and New York City Police Department and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

19.    Defendants **CORECTION OFFICERS JOHN DOE #1-4** were, and still are, at all times relevant herein, acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of Defendant **THE CITY OF NEW**

**YORK,** were acting for, and on behalf of, and with the power and authority vested in them by Defendants **THE CITY OF NEW YORK** and New York City Department of Correction and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

20. Defendants **CORIZON HEALTH INC.** was, and still is, at all times relevant herein, a private entity, medical provider, retained by Defendant **THE CITY OF NEW YORK** to maintain and/or provide healthcare for its Department of Correction.

## STATEMENT OF FACTS

21. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

22. The events which gives rise to the litigation occurred on or about February 7, 2015 and concluded on or about April 30, 2015.

23. On or about February 7, 2015 at approximately 2:00 P.M., Plaintiff was a lawful citizen/pedestrian in front or near parking lot of Hotel Sheridan, located at 1440 Sheridan Expressway, County of Bronx, State of New York when she became the victim of police unlawful activity, force and retaliation.

24. At the above mentioned time and place, Defendants **POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000) and POLICE OFFICERS JOHN DOE #1-8** approached her, unlawfully handcuffed and forced into police car without reasonable suspicion and without any probable cause to justify Defendants' actions.

25. Plaintiff **LAURA HONSAKER** was transported to the 43rd Precinct where she was fingerprinted, photographed and placed in a dirty, unsanitary and bug infested holding cell.

26. Upon information and belief, police officers denied her several requests to make a phone call.

27. After spending approximately nine (9) hours in a holding cell of the 43rd Precinct Plaintiff was transported to Central Booking, where she was again fingerprinted, photographed, searched, and placed in a holding cell.

28. Upon information and belief, the cell was dirty, filled with bugs and otherwise grossly unsanitary.

29. Upon information and belief, Plaintiff **LAURA HONSAKER** spent approximately ten (10) hours in a holding cell, until she was brought in front of the Honorable Judge.

30. Plaintiff **LAURA HONSAKER** was shackled, handcuffed and transported to Rikers Correctional Facility (hereinafter, "Rikers") in a bus with all male inmates.

31. Upon arrival to Rikers, Plaintiff was stripped and searched and had to undergo various tests in the medical unit.

32. Upon completion of the tests Plaintiff **LAURA HONSAKER** was informed that she is pregnant.

33. Upon information and belief, Plaintiff was told by Defendants **DR. ANDREA BUSHELLE, MD and JOHN/JANE DOE #1-4,** that she has to take Methadone, because they have detected opiates in her blood.

34. Upon information and belief, Defendants **DR. ANDREA BUSHELLE, MD and JOHN/JANE DOE #1-4,** dismissed all explanations made by Plaintiff **LAURA HONSAKER** that she was prescribed painkillers for her toothache and that is the reason why opiates were detected in her blood, and denied any right for any kind of review or hearing.

35. Upon information and belief, Plaintiff **LAURA HONSAKER** proceeded to inform Defendants **DR. ANDREA BUSHELLE, MD and NYCHHC'S JOHN/JANE DOE #1-4** about the fact that she has taken prescribed painkillers in the morning of the arrest, on February 7, 2015.

36. Upon information and belief, Plaintiff **LAURA HONSAKER** was told that if she doesn't agree to take Methadone, she will lose her fetus, essentially forcing her to take medication under false pretenses.

37. Upon information and belief, in order to save her unborn child Plaintiff **LAURA HONSAKER** agreed to Methadone treatment.

6

38. Upon information and belief, throughout her time in Rikers, Plaintiff was held in a Mental Observation Unit (MO).

39. Upon information and belief, Plaintiff **LAURA HONSAKER** had to interact with mentally unstable/disturbed people on a daily basis, which made her time in Rikers even more unbearable.

40. Plaintiff **LAURA HONSAKER** had to attend several court appearances, until she was released from custody on or around February 26, 2015.

41. On April 30, 2015 all the charges against Plaintiff **LAURA HONSAKER** were dismissed by Honorable Judge S. Michels.

42. As a result of unlawful actions by Rikers' officials, which have forced Plaintiff **LAURA HONSAKER** to take Methadone treatment, she had to continue treatment for the entire duration of her pregnancy, suffering the side effects both physically and mentally.

43. Plaintiff-Infant **A.V.** was born on April 23, 2015.

44. Upon information and belief, due to the impact that Methadone was doing to Plaintiff **LAURA HONSAKER** Plaintiff-Infant **A.V.** was born seven (7) weeks prematurely.

45. Immediately after giving birth to her daughter, Plaintiff **LAURA HONSAKER** lost supply of her breast milk.

46. Plaintiff-Infant **A.V.** was born with Methadone addiction and had to undergo Morphine treatment for one (1) month immediately after birth.

47. Upon information and belief, Plaintiff **LAURA HONSAKER** has never served time in prison prior to the incident.

48. Upon information and belief, Plaintiff had deficient medical treatment at the hands of medical personnel connected with Rikers Correctional Facility. As a consequence of their deficient medical treatment, Plaintiff was placed in poorer conditions of confinement and higher security generally designated for mentally ill inmates where she was made to feel unsafe and in fear for her life and the life of her unborn child's.

**AS AND FOR A FIRST CAUSE OF ACTION**
**DEPRIVATION OF RIGHTS UNDER THE**
**UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983**
**BY POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT**
**JAMES KELLY (SHIELD #0000), POLICE OFFICERS JOHN DOE #1-8**

49.     Plaintiffs repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

50.     By her conduct and actions in arresting, searching, imprisoning, failing to intercede on behalf of Plaintiffs and in failing to protect them from the unjustified and unconstitutional treatment they received at the hands of Defendants **THE CITY OF NEW YORK** and by **POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000) and POLICE OFFICERS JOHN DOE #1-8** acting with animus, and under color of law and without lawful justification, intentionally, maliciously, and with deliberate indifference to and/or a reckless disregard for the natural and probable consequences of her acts, caused injury and damage in violation of Plaintiff's due process clause and constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

51.     As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific physical, psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**AS AND FOR A SECOND CAUSE OF ACTION**
**DEPRIVATION OF RIGHTS UNDER THE**
**UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983**
**BY CORRECTION OFFICERS JOHN DOE #1-4**

52.     Plaintiffs repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

53.     By her conduct and actions in arresting, searching, imprisoning, failing to intercede on behalf of Plaintiffs and in failing to protect them from the unjustified and unconstitutional treatment they received at the hands of Defendants **CORRECTION OFFICERS JOHN DOE #1-4** acting with animus, and under color of law and without lawful justification, intentionally, maliciously,

8

and with deliberate indifference to and/or a reckless disregard for the natural and probable consequences of her acts, caused injury and damage in violation of Plaintiff's due process clause and constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

54.    As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific physical, psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A THIRD CAUSE OF ACTION
### DEPRIVATION OF RIGHTS UNDER THE
### UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983
### CORIZON HEALTH SERVICES INC., DR. ANDREA BUSHELLE, MD, and
### NEW YORK CITY HEALTH AND HOSPITALS CORPORATION (NYCHHC)'S
### JOHN/JANE DOE #1-4

55.    Plaintiffs repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

56.    By her conduct and actions in forcibly administering unwarranted and unnecessary medication, in refusing to seek a proper review prior to continuing the administration, for committing medical malpractice, for failing to give proper Informed Consent and failing to intercede on behalf of Plaintiffs and in failing to protect them from the unjustified and unconstitutional treatment they received at the hands of Defendants **CORIZON HEALTH SERVICES INC., DR. ANDREA BUSHELLE, MD, and NYCHHC'S JOHN/JANE DOE #1-4** acting with animus, and under color of law and without lawful justification, intentionally, maliciously, and with deliberate indifference to and/or a reckless disregard for the natural and probable consequences of her acts, caused injury and damage in violation of Plaintiff's due process clause and constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

57.    As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific physical, psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A FOURTH CAUSE OF ACTION

**UNCONSTITUTIONAL VIOLATIONS UNDER THE 8TH, 14th and 4th AMENDMENTS OF THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983, AND NEW YORK STATE LAW (VIOLATION OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS, CRUEL AND UNUSUAL PUNISHMENT, INAPPROPRIATE MEDICAL CARE, DELIBERATE INDIFFERENCE TO MEDICAL NEEDS, DEVIATION FROM PROTOCOLS, INSUFFICIENT CONDITIONS OF CONFINEMENT**

58.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as thought fully stated herein.

59.     Defendants, individually and collectively are liable pursuant to 42 U.S.C. § 1983 for abuses against Plaintiff that shock the conscience in violation of the Fourteenth Amendment to the United States Constitution.

60.     Defendants individually and collectively are liable for abuses against Plaintiff that shock the conscience in violation of Article 1, § 5 of the New York State Constitution.

61.     Defendants individually and collectively are liable for abuses against Plaintiff that shock the conscience in violation of New York law, rules and regulations.

62.     Defendants infringed on Plaintiffs **LAURA HONSAKER** and **A.V.'s** liberty.

63.     Defendants exposed Plaintiffs **LAURA HONSAKER** and **A.V.'s** to imminent and substantial risks of harm by forcing medication

64.     Defendants violated their *parens patriae* powers in failing to protect Plaintiff **LAURA HONSAKER** who was particularly vulnerable and unable to care for herself as an inmate and Plaintiff **A.V.** who was particularly vulnerable and unable to care for herself as an unborn child.

65.     Defendants failed to provide Plaintiff **LAURA HONSAKER** the opportunity to challenge the proposed action of administering methadone and the proposed action of confining her with other inmates with mental illnesses.

66.     Plaintiff suffered from the conditions of her confinement in that she was placed in a dangerous area populated by mentally ill inmates and improperly medicated.

67.     Upon information and belief, Defendants were aware of the circumstances, which allegedly presented a substantial risk of serious harm to plaintiff, but did nothing about them.

68.    Upon information and belief, Defendants exposed Plaintiffs **LAURA HONSAKER** and **A.V.** to unnecessary and wanton infliction of pain.

69.    Upon information and belief, Defendants inflicted cruel and unusual punishment on Plaintiffs **LAURA HONSAKER** and **A.V.** by forcing medication thereby causing an unconstitutional invasion of bodily integrity.

70.    Upon information and belief, Defendants deprived Plaintiff **LAURA HONSAKER** of her right to avoid unwanted medical intervention.

71.    Upon information and belief, Defendants deprived Plaintiff **LAURA HONSAKER** of her right to refuse medical treatment.

72.    Upon information and belief, Defendants deprived Plaintiff **LAURA HONSAKER** of a hearing to determine whether an inmate in their situation can be forcibly administered Methadone.

73.    Upon information and belief, Plaintiff **LAURA HONSAKER** at all times, was and is a competent adult with a common law and statutory right of informed consent.  Plaintiff at all times, was and is able to refuse medical treatment and at all times, was and is competent to make medical decisions on behalf of herself and her unborn child, Plaintiff **A.V.**.

74.    Upon info and belief, the medical treatment that was forcibly administered was not a "life-saving treatment" and there was no "compelling need" for the immediate treatment, in other words there was no "exigent circumstances" at the time.

75.    Moreover, without any reason and/or need Plaintiff **LAURA HONSAKER** was placed into Mental Observation Unit, where she was kept with mentally unstable inmates and had to interact with them on a daily basis.

76.    Upon information and belief, Plaintiff **LAURA HONSAKER** was improperly diagnosed by Defendants.

77.    Prison need not be comfortable but under the color of law should demonstrate that it meets the basic needs of all of its occupants. These basic needs include, food , clothing, shelter, medical

care and reasonable safety.  *Helling v. McKinney*, 509 U.S. 25. 32 (1993), (Bianco, J., Decision at 12).

78.   Upon information and belief, Plaintiff **LAURA HONSAKER**'s needs were not sufficiently met.

79.   Upon information and belief, Plaintiff **LAURA HONSAKER** was improperly and forcibly administrated Methadone.

80.   Said administration of Methadone greatly affected Plaintiff **LAURA HONSAKER** and her unborn child Plaintiff-Infant **A.V..**

81.   Upon information and belief, due to the impact that Methadone was doing to Plaintiff **LAURA HONSAKER** Plaintiff-Infant **A.V.** was born seven (7) weeks prematurely.

82.   Immediately after giving birth to her daughter Plaintiff **LAURA HONSAKER** lost supply of her breast milk.

83.   Upon information and belief, the impingement on Plaintiffs' constitutional rights was not valid and not reasonably related to any legitimate penological interest. *Matter of Walton v. NYS Dept. of Correctional Servs.*, 13 NY3d 475, 491, 893 NYS2d 453, 921 NE2d 145 (2009).

84.   Plaintiff-Infant **A.V.** was born with Methadone addiction and had to undergo Morphine treatment for one (1) month immediately after birth.

85.   As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific physical, psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

### AS AND FOR A FIFTH CAUSE OF ACTION
### DERELICTION OF DUTY. DEPRAVED INDIFFERENCE
### and FAILURE TO INTERCEDE  BY DEFENDANTS THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000), POLICE OFFICERS "JOHN DOE #1-8", CORRECTION OFFICERS "JOHN DOE 1-4", CORIZON HEALTH SERVICES INC., DR. ANDREA BUSHELLE, MD, and  NYCHHC'S JOHN/JANE DOE #1-4

86.   Plaintiffs repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

87. Defendants **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000), POLICE OFFICERS "JOHN DOE #1-8", CORRECTION OFFICERS "JOHN DOE 1-4", CORIZON HEALTH SERVICES INC., DR. ANDREA BUSHELLE, MD, and NYCHHC'S JOHN/JANE DOE #1-4** were under a duty of safeguarding the public and ensuring the appropriate execution of Defendant's role.

88. Plaintiff duly relied on Defendants' fulfillment of their New York City Policing and Correction Officer duties.

89. Defendants had an affirmative duty to intercede when Plaintiff's constitutional rights were being violated in Defendants' presence.

90. At the time of the incidents, Defendants **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000), POLICE OFFICERS "JOHN DOE #1-8", CORRECTION OFFICERS "JOHN DOE 1-4", CORIZON HEALTH SERVICES INC., DR. ANDREA BUSHELLE, MD, and NYCHHC'S JOHN/JANE DOE #1-4** were observing and aware of the wrongful acts against Plaintiff.

91. At the time of the incident, Defendants **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000), POLICE OFFICERS "JOHN DOE #1-8", CORRECTION OFFICERS "JOHN DOE 1-4", CORIZON HEALTH SERVICES INC., DR. ANDREA BUSHELLE, MD, and NYCHHC'S JOHN/JANE DOE #1-4** neglected to intervene on Plaintiff's behalf in dereliction of their duty to Plaintiff and in depraved indifference to Plaintiff's well-being.

92. Defendants **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000), POLICE OFFICERS "JOHN DOE #1-8", CORRECTION OFFICERS "JOHN DOE 1-4",**

CORIZON HEALTH SERVICES INC., DR. ANDREA BUSHELLE, MD, and NYCHHC'S JOHN/JANE DOE #1-4 violated Plaintiff's constitutional rights when they failed to intercede and prevent the violation or further violation of Plaintiff's constitutional rights and the injuries or further injuries caused as a result of said failure.

93.     Defendants **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000), POLICE OFFICERS "JOHN DOE #1-8", CORRECTION OFFICERS "JOHN DOE 1-4", CORIZON HEALTH SERVICES INC., DR. ANDREA BUSHELLE, MD, and NYCHHC'S JOHN/JANE DOE #1-4** had an affirmative duty to intercede when Plaintiff's constitutional rights were being violated in Defendants' presence by assault, abuse and punishments.

94.     As a result of the foregoing, Plaintiff was deprived of her liberty, suffered a loss of quality and/or enjoyment of life, economic injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

### AS AND FOR A SIXTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL
### HARM AND/OR DISTRESS

95.     Courts have held that continuous and coercive harassment *can* establish an IIED cause of action. *Alexander v. Unification Church of America*, 634 F.2d 673, 678–679 (2d Cir.1980) (filing of harassing lawsuits, constant surveillance, patrolling of plaintiffs' homes);*Green v. Fischbein Olivieri Rozenholc & Badillo*, 119 A.D.2d 345, 507 N.Y.S.2d 148 (1st Dep't 1986) (baseless eviction proceedings against plaintiff-tenant by landlord, disruption in services, deterioration of living conditions, interference with mails, verbal abuse of plaintiff and her guests). *But see, Gay v. Carlson*, 60 F.3d 83, 89 (2d Cir.1995) (finding plaintiff had not established an IIED claim where "[a]ll that plaintiff alleges that any of the defendants has done is lodge official complaints about plaintiff's conduct or discuss the basis of those complaints with others.").

96.     Because many of these "last actionable acts" occurred within the statute of limitations period,

14

the action is not time-barred. *Cf. Leonhard v. United States,* <u>633 F.2d at 613</u> (holding that under general principles of New York law, the statute of limitations " 'runs from the commission of the last wrongful act.' ")(citations omitted).

97.  Hon. Denise L. Cote of ther district recently reached a similar conclusion on ther issue. *Bonner v. Guccione,* 94 Civ. 7735, slip. op. at 7–15, 1996 WL 22355 (S.D.N.Y. January 17, 1996)(holding where last act of an uninterrupted course of actionable conduct falls within statute of limitations, plaintiff permitted to assert IIED claim for entire course of conduct, even those acts beyond the statute of limitations). *Cf. Leonhard v. United States,* 633 F.2d at 613 (holding that under New York law where certain continuous wrongs are alleged, the last wrongful act triggers the statute of limitations).

98.  Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

99.  Under the color of state law, Defendants **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000), POLICE OFFICERS "JOHN DOE #1-8", CORRECTION OFFICERS "JOHN DOE 1-4", CORIZON HEALTH SERVICES INC., DR. ANDREA BUSHELLE, MD, and NYCHHC'S JOHN/JANE DOE #1-4** intentionally caused continuous emotional distress and damage to Plaintiff. The acts and conduct of Defendants were the direct and proximate cause of continuous emotional distress emotional injury to Plaintiffs and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

100.  Upon information and belief, Defendants committed multiple acts against Plaintiff, which invaded her interests and inflicted injuries upon her throughout all stages of investigation, the continuous detention and the hearings, and trials, which cumulatively amounted to intentional infliction of emotional harm and/or distress.

101.  The emotional harm and/or distress continues to present day.

102. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific physical injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### NEGLIGENCE AND/OR GROSS NEGLIGENCE

103. Plaintiffs repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

104. Defendants **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000), POLICE OFFICERS "JOHN DOE #1-8", CORRECTION OFFICERS "JOHN DOE 1-4", CORIZON HEALTH SERVICES INC., DR. ANDREA BUSHELLE, MD, and NYCHHC'S JOHN/JANE DOE #1-4** negligently or grossly negligent caused injuries and otherwise damaged Plaintiffs. The acts and conduct of Defendant were the direct and proximate cause of injury to Plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

105. As a result of the foregoing, Plaintiffs were deprived of their liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### MALICIOUS PROSECUTION UNDER THE
### UNITED STATES CONSTITUTION and 42 U.S.C. § 1983

106. Plaintiff **LAURA HONSAKER** repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

107. By the actions described above, Defendants **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000) AND POLICE OFFICERS JOHN DOE #1-8** initiated a prosecution against Plaintiff **LAURA HONSAKER**.

108. By the actions described above, Defendants **THE CITY OF NEW YORK, POLICE**

OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000) AND POLICE OFFICERS JOHN DOE #1-8 lacked probable cause to believe the proceeding could succeed.

109.   By the actions described above, Defendants **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000) AND POLICE OFFICERS JOHN DOE #1-8** caused Plaintiff **LAURA HONSAKER** to be maliciously prosecuted without any probable cause, without reasonable suspicion, without any proper claims, without any right or authority to do so, illegally and with malice.

110.   Defendants **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000) AND POLICE OFFICERS JOHN DOE #1-8** arrested and issued legal process in order to obtain collateral objectives outside the legitimate ends of the legal process and intimidated Plaintiff Ms. Honsaker for their personal interest and further to prevent Plaintiff from disclosing the aforementioned evidence of their misconduct.

111.   The prosecution was ultimately terminated in favor of Plaintiff **LAURA HONSAKER**.

112.   As a result of the foregoing, Plaintiff **LAURA HONSAKER** was deprived of her liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A NINTH CAUSE OF ACTION
### NEW YORK STATE CLAIM OF MALICIOUS PROSECUTION

113.   Plaintiff **LAURA HONSAKER** repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

114.   By the actions described above, Defendants **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000) AND POLICE OFFICERS JOHN DOE #1-8** caused Plaintiff to be maliciously prosecuted without any probable cause, without reasonable suspicion, without any

proper claims, without any right or authority to do so, illegally and with malice.

115. Defendants **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000) AND POLICE OFFICERS JOHN DOE #1-8** arrested and issued legal process in order to obtain collateral objectives outside the legitimate ends of the legal process and intimidating Plaintiff for their personal interest and further to prevent Plaintiff from disclosing the aforementioned evidence of their misconduct.

116. Defendants acted with intent to do harm to Plaintiff without excuse or justification.

117. The legal process was terminated in favor of Plaintiff.

118. A timely Notice of Claim was filed with the City of New York.

119. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A TENTH CAUSE OF ACTION
### FALSE ARREST and FALSE IMPRISONMENT

120. Plaintiff **LAURA HONSAKER** repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

121. By the actions described above, Defendant **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000) AND POLICE OFFICERS JOHN DOE #1-8** caused Plaintiff to be falsely arrested and falsely imprisoned without probable cause, without reasonable suspicion, illegally, without any proper claims, and without any right or authority to do so. The acts and conduct of Defendants were the direct and proximate cause of injury and damage to Plaintiff and violated Plaintiff's statutory and common law rights as guaranteed by the laws of the Constitution of the State of New York.

122. A timely Notice of Claim was filed on behalf of Plaintiff.

123. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A ELEVENTH CAUSE OF ACTION
### VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO THE COMMON LAW OF THE STATE OF NEW YORK VIA BATTERY

124. Plaintiffs repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

125. Defendant **THE CITY OF NEW YORK** is vicariously liable to Plaintiff for the individual Defendant's **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000), POLICE OFFICERS "JOHN DOE #1-8", CORRECTION OFFICERS "JOHN DOE 1-4", CORIZON HEALTH SERVICES INC., DR. ANDREA BUSHELLE, MD, and NYCHHC'S JOHN/JANE DOE #1-4,** common tort of battery via the principle of *respondeat superior* and that New York CPLR § 1601 does not apply pursuant to the exception provided by CPLR § 1602(1)(b).

126. Defendants committed a battery on Plaintiff as described above, while in custody.

127. The above-mentioned abuse was harmful, un-consented, and unjustified and in so doing, Defendant, violated the laws and Constitution of the State of New York and otherwise violated Plaintiff's rights under New York Law.

128. A timely Notice of Claim was filed by Plaintiff.

129. That by reason of the battery, Plaintiff was harmed physically and emotionally, all while unlawfully and illegally detained, and that Plaintiff was otherwise harmed as a result of the Defendant's actions

130. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered a loss of quality and/or enjoyment of life, economic injury, psychological injury and emotional distress, great

humiliation, costs and expenses, and was otherwise damaged and injured.

### AS AND FOR A TWELFTH CAUSE OF ACTION
#### VIOLATION OF PLAINTIFF'S RIGHT
#### UNDER NEW YORK STATE LAW
#### VIA ASSAULT

131.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

132.   That on the aforementioned time and place, Defendants committed the tort of assault against Plaintiff by causing her to be in apprehension of imminent, harmful and offensive touching and in so doing, Defendants violated the laws and Constitution of the State of New York and otherwise violated Plaintiff's rights under New York Law.

133.   That Defendant **THE CITY OF NEW YORK** is vicariously liable to Plaintiff for the individual Defendant's common law tort of assault via the principle of *respondeat superior* and that New York CPLR § 1601 does not apply pursuant to the exception provided by CPLR § 1602(1)(b).

134.   A timely Notice of Claim was filed by Plaintiff.

135.   That by reason of the aforesaid committed by Defendants, Plaintiff suffered and continues to suffer physical injury and that she was otherwise damaged.

136.   As a result of the foregoing, Plaintiff was deprived of her liberty, suffered a loss of quality and/or enjoyment of life, economic injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION
#### NEGLIGENT HIRING, SCREENING, RETENTION,
#### SUPERVISION and TRAINING

137.   Plaintiffs repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

138.   Defendant **THE CITY OF NEW YORK** negligently hired, screened, retained, supervised and trained Defendants **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON**

(SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000), POLICE OFFICERS "JOHN DOE #1-8", CORRECTION OFFICERS "JOHN DOE 1-4", DR. ANDREA BUSHELLE, MD, and NYCHHC'S JOHN/JANE DOE #1-4 and its employees.

139.    Defendant **THE CITY OF NEW YORK** was on notice that the medical personnel connected with Rikers Correctional Facility deviated from policies, practices and customs of failing to adequately remedy and address health issues of inmates.  Therefore, Defendant **THE CITY OF NEW YORK** must be liable under the theory of *respondeat superior.*

140.    As a result of the foregoing, Plaintiffs were deprived of their liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**AS AND FOR A FOURTEENTH CAUSE OF ACTION**
**NEGLIGENT INFLICTION OF EMOTIONAL HARM**

141.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

142.    Defendants **THE CITY OF NEW YORK, POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000), POLICE OFFICERS "JOHN DOE #1-8", CORRECTION OFFICERS "JOHN DOE 1-4", CORIZON HEALTH SERVICES INC., DR. ANDREA BUSHELLE, MD, and NYCHHC'S JOHN/JANE DOE #1-4** negligently caused emotional distress and damage to Plaintiffs.  The acts and conduct of Defendants were the direct and proximate cause of emotional injury to Plaintiffs and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

143.    As a result of the foregoing, Plaintiffs were deprived of their liberty, suffered specific psychological  and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION
### EXCESSIVE FORCE WITH RESPECT TO MUNICIPAL LIABILITY

144.  Plaintiff **LAURA HONSAKER** repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

145.  Throughout the period of her imprisonment and/or detention, Plaintiff **LAURA HONSAKER** was continuously subjected to excessive and unreasonable detention and to multiple excessive and unnecessary and unreasonable acts of physical force (forcibly administered medication while in detention), and to unnecessary and unreasonable and excessive terms and conditions of her imprisonment at the hands of Defendants under the color of state law, in violation of her rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 USC § 1983.

146.  In addition to the violation of Plaintiff's constitutional rights as stated above, it is clear from the outlined allegations, there was a municipal policy or custom that caused Ms. Honsaker's injuries and the policies (specifically but not unconstitutional conditions of confinement, excessive force, and placement in a mental illness populated area) were causally connected to Ms. Honsaker's deprivation of constitutional rights.1

147.  There is a pattern of conduct involving multiple officers over an extended period of time, which creates an inference that a failure to train and/or supervise existed. *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 130 n. 10 (2d Cir. 2004).

148.  Ms. Honsaker's treatment during her confinement was the result of something more than a single officer's misconduct. The "something more" was a custom or policy of encouraging, condoning or turning a blind eye to the types of misconduct complained of.

149.  See, *Deshaney v. Winnebego County Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against her will, the Constitution

---

1 In light of recent revelations about widespread brutality at Rikers Island, that discovery will reveal that an unconstitutional custom and/or practice of officer-on-inmate violence, combined with a failure of training and supervision, indeed existed at that jail. See Michael Winerip and Michael Schwirtz, Rikers: Where Mental Illness Meets Brutality in Jail, N.Y. Times, July 14, 2014.

imposes upon it a corresponding duty to assume some responsibility for her safety and general well-being."); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."). Additionally, for present purposes, they may be treated collectively.

150. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**AS AND FOR A SIXTEENTH CAUSE OF ACTION**
**DEPRIVATION OF RIGHTS UNDER THE**
**UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983**
**BY THE CITY OF NEW YORK**
**CLAIM FOR *MONELL* LIABILITY**

151. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

152. At all times material to ther complaint, Defendant **THE CITY OF NEW YORK** acting through its police department, department of correction and through Defendants **POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000), POLICE OFFICERS "JOHN DOE #1-8", CORRECTION OFFICERS "JOHN DOE 1-4", CORIZON HEALTH SERVICES INC., DR. ANDREA BUSHELLE, MD, and NYCHHC'S JOHN/JANE DOE #1-4**had in effect actual and/or *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

153. At all times material to their complaint, Defendant **THE CITY OF NEW YORK** acting through its police department, department of correction and through Defendants **POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000), POLICE OFFICERS "JOHN DOE #1-8", CORRECTION OFFICERS "JOHN DOE 1-4", CORIZON HEALTH SERVICES INC., DR.**

ANDREA BUSHELLE, MD, and NYCHHC'S JOHN/JANE DOE #1-4 had in effect and/or *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise and discipline employees and police officers, and of failing to inform the individual Defendants' supervisors of the need to train, screen, supervise and discipline said Defendants. The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

154.    Defendant **THE CITY OF NEW YORK** acting through its police department, department of correction and through Defendants **POLICE OFFICER CESAR DELEON (SHIELD #012479), SERGEANT JAMES KELLY (SHIELD #0000), POLICE OFFICERS "JOHN DOE #1-8", CORRECTION OFFICERS "JOHN DOE 1-4", CORIZON HEALTH SERVICES INC., DR. ANDREA BUSHELLE, MD, and NYCHHC'S JOHN/JANE DOE #1-4** being aware that such lack of training, screening, supervision, and discipline leads to improper conduct, acted with deliberate indifference in failing to establish a program of effective training, screening, supervision and discipline. Defendant **THE CITY OF NEW YORK** being aware that the persistent and substantial risk of improper detention of persons based upon insufficient or incorrect information, and effective training, screening, supervision and discipline would lessen the likelihood of such occurrences. There are recurrent circumstances which involve such potential danger to the constitutional rights of citizens, more specifically Plaintiff and which are officially tolerated by Defendant **THE CITY OF NEW YORK**. Such policies, practices, customs or usages were a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the harm/damages alleged herein, in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

155.    The existence of the above-described de facto unlawful policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officers and Correction Officers and Medical Personnel and defendant **THE**

CITY OF NEW YORK, including but not limited to the NYPD, DOC and NYCHHC.

156.   At the time of the aforementioned constitutional violations, the THE CITY OF NEW YORK and NYPD, DOC and NYCHHC were and had been on notice of such unconstitutional conduct, customs, and de facto policies, such that the failure of THE CITY OF NEW YORK's NYPD, DOC and NYCHHC to take appropriate remedial action amounted to deliberate indifference to the constitutional rights of persons with whom the correction officers come in contact. In light of the extensive pattern of well-settled, pervasive customs and policies causing constitutional violations, documented in part infra, the need for more effective supervision and other remedial measures was patently obvious, but the THE CITY OF NEW YORK and NYPD, DOC and NYCHHC made no meaningful attempt to prevent future constitutional violations.

157.   Defendant THE CITY OF NEW YORK knew or should have known that the acts alleged herein would deprive Plaintiff of her rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

158.   Defendant THE CITY OF NEW YORK is directly liable and responsible for the acts of Defendants, as it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the City and NYPD, DOC and NYCHHC, and to require compliance with the Constitution and laws of the United States.

159.   Despite knowledge of such unlawful de facto policies, practices, and/or customs, these supervisory and policy-making officers and officials of the NYPD, DOC and NYCHHC and the THE CITY OF NEW YORK, including the NYPD, DOC and NYCHHC, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead approve and ratify these policies, practices and/or customs through their active

encouragement of, deliberate indifference to and/or reckless disregard of the effects of said policies, practices and/or customs or the constitutional rights of persons in the City of New York.

160.  The aforementioned Defendant's **THE CITY OF NEW YORK** policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned City policies, practices and/or customs, Defendants felt empowered to arrest Plaintiff without probable cause and then force her brother to take a plea, and while in custody forcibly administer unnecessary medication and place her in an area with mentally ill and violent inmates.

161.  Pursuant to the aforementioned **THE CITY OF NEW YORK** policies, practices and/or customs, the employees, representatives and/or agents failed to intervene in or report Defendants' violations of Plaintiff's rights.

162.  Plaintiff's injuries were a direct and proximate result of the defendant **THE CITY OF NEW YORK**'s wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant **THE CITY OF NEW YORK** to properly supervise, train and discipline their employees, agents and representatives of NYPD, DOC and NYCHHC.

163.  As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific physical, psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

164.  In this case, there was: Police withholding evidence and/or misrepresenting or falsifying evidence; Overall inadequate police work and inadequate prosecutorial work-up of the case; and permitting and/or enforcing false arrest; Medical staff forcibly administering medication, not following the process of a review or hearing, and Correction Officers placing Plaintiff in unsafe and unconstitutional conditions of confinement.

165.   The acts complained of were carried out by the aforementioned defendants in their capacities as officers and medical staff pursuant to customs, policies, usages, practices, procedures and rules of the City, NYPD, DOC and NYCHHC, all under the supervision of higher-ranking representatives, employees and/or agents of the NYPD, DOC and NYCHHC.

166.   The aforementioned customs, practices, procedures and rules of the City and NYPD include, but are not limited to: 1) arresting persons known to be innocent in order to meet "productivity goals"; 2) falsely swearing out criminal complaints and/or lying and committing perjury during sworn testimony to protect other officers and meet productivity goals; 3) failing to supervise, train, instruct and discipline police officers thereby encouraging their misconduct and exhibiting deliberate indifference towards the constitutional rights of persons within the officers' jurisdiction; 4) discouraging police officers from reporting the corrupt or unlawful acts of other officers; 5) retaliating against officers who report police misconduct; and 6) failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented with proper supervision.

167.   At the time of the aforementioned constitutional violations, the **THE CITY OF NEW YORK** and NYPD were and had been on notice of such unconstitutional conduct, customs, and de facto policies, such that the failure of City and NYPD to take appropriate remedial action amounted to deliberate indifference to the constitutional rights of persons with whom the police come in contact. In light of the extensive pattern of well-settled, pervasive customs and policies causing constitutional violations, documented in part infra, the need for more effective supervision and other remedial measures was patently obvious, but the **THE CITY OF NEW YORK** and NYPD made no meaningful attempt to prevent future constitutional violations.

168.   The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented by the following civil rights actions and parallel prosecutions of police officers:

a) Colon v. City of New York, 9-CV-0008 (JBW)(E.D.N.Y) (in an Order dated November 29,

27

2009 denying the City's motion to dismiss on Iqbal/Twombley grounds, wherein the police

officers at issued were and prosecuted for falsifying evidence, the Honorable Jack B. Weinstein

wrote:

'Informal inquiry by the court and among the judges of ther court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police  Department.   Despite numerous inquiries by commissions and strong reported efforts by the present administration— through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.'

b) <u>McMillan v. City of New York</u>, 04-cv-3990 (FB)(RML) (E.D.N.Y.)(officers fabricated

evidence against an African-American man in Kings County and initiated drug charges

against him, despite an absence of an quantum of suspicion);

c) <u>Richardson v. City of New York</u>, 02-CV-3651 (JG)(CLP) (E.D.N.Y.)(officers fabricated

evidence including knowingly false sworn complaints, against an African-American man in

Kings County and initiated drug charges against him, despite an absence of any quantum of

suspicion);

169.    The existence of the aforesaid unconstitutional customs and practices, specifically with regard to

the practice or custom of officers lying under oath, falsely swearing out criminal complaints or

otherwise falsifying or fabricating evidence, are further evidenced, inter alia, by the following:

a) Morgan Cloud, The Dirty Little Secret, 43 EMORY L.J. 1311, 1311-12 (1994) ("Judges, prosecutors, defense lawyers, and repeat offenders all know that police officers lie under oath."); Jerome H. Skolnick, Deception by Police, CRIM. JUST. ETHICS, Summer/Fall 1982, at 40, 42 (concluding that police "systematic[ally]" perjure themselves to achieve convictions); ALAN M. DERSHOWITZ, THE ABUSE EXCUSE 233 (Hachette Book Group 1994) (suggesting that "recent disclosures about rampant police perjury cannot possibly come as any surprise" to those who have practiced criminal law in state or federal courts); ALAN M. DERSHOWITZ, THE BEST DEFENSE xxi-xxii (Random House   1983) ("Almost all police lie about whether they violated the Constitution in order to convict guilty defendants."); Deborah Young, Unnecessary Evil: Police Lying in Interrogations, 28 CONN. L. REV. 425, 427 (1996) (asserting that "the reported cases of police lying represent only a fraction of the actual cases in which police lying occurred"); David Kocieniewski, Perjury Dividend-A Special Report, N.Y. TIMES,  Jan.5, 1997, at A1 (noting that according to one New York police officer, "lying under oath was standard procedure"); Lie Detectors Could Curb Police Perjury, USA TODAY, Aug. 1, 1996, (Magazine), at 13 ("[M]any experienced trial lawyers have said they believe police officers frequently lie on the stand."); Joseph D. McNamara, Has the Drug War created an   Officer Liars' Club?, L.A. TIMES, Feb. 11, 1996, at M1 (noting recent perjury scandals have  surfaced in

police departments in Los Angeles, Boston, New Orleans, San Francisco, Denver, New York, and other large cities; and stating "[H]undreds of thousands of law-enforcement officers commit felony perjury every year testifying about drug arrests.").

b) The Mollen Commission concluded that police perjury and falsification of official records

is probably the most common form of police corruption facing the criminal justice system.

It concluded:

Regardless of the motives behind police falsifications, what is particularly troublesome about ther practice is that it is widely tolerated by corrupt and honest officers alike, as well as their superiors. Corrupt and honest officers told us that their supervisors  knew or should have known about falsified versions of searches and arrests and never questioned them.1 {…} What breeds ther tolerance is deep-rooted perception among many officers of all ranks within the Department that there is nothing really wrong with compromising the facts to fight crime in the real world. Simply put, despite devastating consequences of police falsifications, there is a persistent belief among officers that it is necessary and justified, even if it is unlawful. As one dedicated officer put it, police officers often view falsification as, to use her words, "doing God's work" – doing whatever it takes to get the suspected criminal off the streets. Ther is so entrenched, especially in high-crime precincts, that when investigators confronted one recently arrested officer with evidence of perjury, he asked in disbelief, "What's wrong with that? They're guilty." *See,* Mollen Commission Report pgs 36-41.

170.   The existence of the aforesaid unconstitutional customs and policies, specifically with regard to

"productivity goals," may be further inferred from the following: Deputy Commissioner Paul J.

Browne has repeatedly admitted that NYPD commanders are permitted to set "productivity

goals."2

171.   The existence of the aforesaid unconstitutional customs and practices, specifically with

regard to the failure to supervise, train, instruct, and discipline police officers, encouraging

their misconduct, and exhibiting deliberate indifference towards the constitutional rights of

persons with whom officers come into contact are further evidenced, inter alia, by the

following:

a) In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in Colon v. City of New York, 09-CV-00008 (E.D.N.Y.), in which he noticed a "widespread… custom or policy by the city approving illegal conduct" such as lying under oath and false swearing, NYPD Commissioner Raymond Kelly acknowledged, "When it happens, it's not for personal gain. It's more for convenience."

---

2 Jim Hoffer NYPD Officer claims pressure to make arrests WABC·TV Eyewitness News, March 22010, available at http:J/abclocal.go.com/Wabc/story?section=news/investigators&id=73053S6 ("Police Officers like others who receive compensation are provided productivity goals and they are expected to work").

b) Regarding Defendant City's tacit condonement and failure to supervise, discipline o provide remedial training when officers engage in excessive force, the Civilian Complaint Review Board is a City agency, allegedly independent of the NYPD, that is responsible for investigating and issuing findings on complaints of police abuse and misconduct. When it does, however, Commissioner Kelly controls whether the NYPD pursues the matter and he alone has the authority to impose discipline on the subject officer(s). Since 2005, during Kelly's tenure, only one quarter of officers whom the CCRB found engaged in misconduct received punishment more severe than verbal "instructions." Moreover, the number of CCRB-substantiated cases that the NYPD has simply dropped (i.e., closed without action or discipline) has spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and approximately 30% in 2008. Alarmingly, the NYPD has refused to prosecute 40% of the cases sent to it by the CCRB in 2009. As a result, the percentage of cases where the CCRB found misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007. Substantiated complaints of excessive force against civilians accounted for more than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped in 2008.3

172. The existence of the above-described de facto unlawful policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officers and officials of the NYPD and defendant **THE   CITY OF NEW YORK**, including without limitation, the Police Commissioner.

173. All of the foregoing acts by defendants deprived Plaintiff of her federally protected rights, including, but limited to, the constitutional rights enumerated herein.

174. Defendant **THE CITY OF NEW YORK** knew or should have known that the acts alleged herein would deprive Plaintiff of her rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

175. Defendant **THE CITY OF NEW YORK** is directly liable and responsible for the acts of Defendants, as it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the City and NYPD, DOC and NYCHHC, and to require compliance with the Constitution and laws of the United States.

176. Despite knowledge of such unlawful de facto policies, practices, and/or customs, these supervisory and policy-making officers and officials of the NYPD, DOC and NYCHHC and

---

3 Daily News, Editorial: City Leaders Must Get Serious About Policing the Police, August 20, 2008.

the **THE CITY OF NEW YORK**, including the Commissioner, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices,    practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead approve and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effects of said policies, practices and/or customs or the constitutional rights of persons in the City of New York.

177.    The aforementioned Defendant's **THE CITY OF NEW YORK** policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned City policies, practices and/or customs, Defendants felt empowered to arrest Plaintiff, medicate and confine her thus, making blatant violations of Plaintiff's constitutional rights.

178.    Pursuant to the aforementioned **THE CITY OF NEW YORK** policies, practices and/or customs, the employees, representatives and/or agents failed to intervene in or report Defendants' violations of Plaintiff's rights.

179.    Plaintiff's injuries were a direct and proximate result of the defendant **THE CITY OF NEW YORK**'s wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant **THE CITY OF NEW YORK** to properly supervise, train and discipline their agents, employees, or representatives.

180.    There is a clear causal connection between the actions of the **THE CITY OF NEW YORK** and the constitutional violations in this case.  Here, **THE CITY OF NEW YORK** caused and is implicated in the constitutional violations and thus, should be held liable for the unconstitutional actions taken by the medical personnel.

181.    **THE CITY OF NEW YORK** knew and was made aware of the history of criminal and medical violations of the medical personnel at Rikers, all of whom were either retained by or

trained by and/or contracted to perform by **THE CITY OF NEW YORK**.

182. Here, it is clear that **THE CITY OF NEW YORK** took action by their hiring and retention, which is sufficient to expose them to liability. *Amnesty America v. Town of West Hartford,* 361 F3d 113, 125 (2d Cir. 2004).

183. Upon information and belief, **THE CITY OF NEW YORK** was on notice that these policies were being unconstitutionally applied by inadequately trained medical staff and consciously has chosen not to train them or hire staff more adequate. *City of Canton,   Ohio v. Harris,* 489 US 378 at 387.

184. By being aware of the medical staff's unconstitutional actions and consciously ignoring them, this in turn can mean that **THE CITY OF NEW YORK** ratified the defendants' actions.   *See, Sorlucco v. New York City Police Dept.,* 971 F2d 864, 870-871 (2d Cir. 1992) (municipality lies where the subordinate's misconduct is "so manifest, as to imply the constructive acquiescence of senior policymaking officials").

185. Plaintiff was injured by the defendants' forcibly administering Methadone and thereafter placing plaintiff in an unconstitutional condition of confinement, and **THE CITY OF NEW YORK** "knowingly and deliberately" was indifferent to the possibility that the New York Health and Hospitals would violate the constitutional rights of inmates. *Fiacco v. City of Rensselear,* 783 F2d at 326-7 (2d Cir. 1986).  4

186. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific physical injury,  psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

<u>**AS AND FOR A SEVENTEENTH CAUSE OF ACTION**</u>
**EXCESSIVE FORCE**

187. Plaintiff Ms. Honsaker repeats and reiterates the allegations set forth in the foregoing

---

4 In this case, Plaintiff has established that that the supervisors' and policymakers' showed deliberate indifference  in that "the need for more or better supervision to protect against constitutional violations was obvious," but that THE CITY OF NEW YORK officials made "no meaningful attempt" to prevent the unconstitutional conduct of the medical staff. *Vann v. City of New York,* 72 F3d 1040, 1049 (2d Cir. 1995).

paragraphs with the same force and effect as though fully stated herein.

188. Throughout the period of her imprisonment and/or detention, Plaintiff was continuously subjected to excessive and unreasonable detention and to multiple excessive and unnecessary and unreasonable acts of physical force (while in detention), and to unnecessary and unreasonable and excessive terms and conditions of her imprisonment (including being held in Mental Observation Unit), at the hands of Defendants under the color of state law, in violation of her rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 USC § 1983.

189. As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**WHEREFORE,** Plaintiffs demands the following relief jointly and severally against all of the Defendants:

    a.   Compensatory damages;

    b.   Punitive damages;

    c.   Declaratory relief;

    d.   Injunctive relief;

    e.   The convening and empanelling of a jury to consider the merits of the claims herein;

    f.   Costs and interest and attorneys' fees;

    g.   Such other further relief as ther court may deem appropriate and equitable.

Dated:        New York, New York
              May 10, 2016

                                        Respectfully submitted,

                                        **NOVO LAW FIRM, PC**
                                        *Attorney for Plaintiff*

                                        By: Ellie A. Silverman, Esq. (4701868)
                                        299 Broadway, 17th Floor
                                        New York, New York 10007
                                        (212) 233-6686
                                        **File No. 15-5115**
                                        ellies@novolawfirm.com